# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: T.A.**

**No. 14-0992** (Monongalia County 12-JA-22)

**FILED**

February 9, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel James Brian Shockley, appeals the Circuit Court of Monongalia County's August 19, 2014, order terminating her parental rights to six-year-old T.A. The Department of Health and Human Resources ("DHHR"), by counsel, Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Ailynn M. Orteza, filed a response on behalf of the child also supporting the circuit court's order. On appeal, petitioner argues that the circuit court erred (a) in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect; (b) in failing to grant a less restrictive alternative disposition; (c) in finding that termination was necessary for the child's welfare and in the child's best interests; and (d) in failing to grant her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 2, 2012, the DHHR filed an abuse and neglect petition against petitioner and the child's father, J.G., alleging that the child, then four years old, had been exposed to inappropriate sexual behavior. Around this time, petitioner met her future fiancé, D.W., and moved into his residence. Although petitioner maintained to this Court that she remains in a "loving and supportive" relationship with D.W., the circuit court found that the relationship was fraught with arguments, fighting, and separations. Even petitioner admitted in her brief to this Court that there were "a few brief periods of separations."

On May 21, 2012, petitioner stipulated to the allegations that she exposed her child to inappropriate sexual behavior, which demonstrated a lack of safe parental judgment. The circuit court adjudicated the child as abused and neglected and petitioner as an abusing parent. On June 25, 2012, the circuit court granted petitioner a six-month, post-adjudicatory improvement period. Pursuant to the terms and conditions of that improvement period, petitioner was to complete all visits with the child and participate in parental education and adult life skills classes, among other services. In December of 2012, the circuit court extended petitioner's improvement period for three months, and, in April of 2013, it granted petitioner a dispositional improvement period.

1

During these improvement periods, the DHHR provided petitioner with a service provider to teach parental education and adult life skills. According to the service provider, petitioner had difficulty understanding the material and did not implement the skills taught. She failed to follow through with proper discipline for the child, appropriate play and eating habits, and proper transitioning at each visit. She also failed to acknowledge her role in the removal of the child from her custody. Ultimately, petitioner did not successfully complete this program. In May of 2013, petitioner's service provider discharged her from the program. In that same month, petitioner reported to the multidisciplinary team that she no longer resided or had a relationship with D.W. However, in her brief to this Court, petitioner states that she and D.W. maintain their relationship and a residence together.

In approximately January of 2013, petitioner became pregnant with another child. She did not initially know whether J.G. or D.W. was the child's father, but, later, it was established that D.W. is the father. Petitioner gave birth to that child in October of 2013, and the DHHR immediately filed for custody.[1]

Thereafter, the circuit court held three dispositional hearings on November 7, 8, and 20, 2013. The circuit court heard testimony from the Child Protective Services case worker, three DHHR service providers, petitioner, and others. According to these witnesses, petitioner did not follow through with her family case plan. Throughout petitioner's improvement periods, she failed to complete parental education and adult life skills classes; failed to implement skills taught in those classes, such as proper discipline and healthy eating habits for the child; and missed visits with the child. The circuit court found that petitioner failed to substantially correct the circumstances that led to the abuse and neglect despite her lengthy improvement periods. Therefore, the circuit court determined that it was in the child's best interests and welfare to terminate petitioner's parental rights to the child. On August 19, 2014, the circuit court entered a corrected dispositional order terminating her parental rights.[2] This appeal followed.

This Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

---

[1] The circuit court's August 19, 2014, order only terminated parental rights to T.A., and, therefore, petitioner's parental rights to her child born in October of 2013 are not at issue in this appeal. This appeal only concerns T.A.

[2] It is unclear from the record on appeal why there was a nine-month delay between the final dispositional hearing and the entry of the corrected order that is the subject of this appeal.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-6-5(b)(3), a respondent parent's failure to respond or follow through with a reasonable family case plan or other rehabilitative efforts constitutes circumstances in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected. Further, West Virginia Code § 49-6-5(a)(6) expressly provides for termination "upon a finding that there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected *in the near future*" and when necessary for the child's welfare. (Emphasis added). The record clearly demonstrates that petitioner had approximately eighteen months to substantially correct the conditions that led to the abuse and neglect, including two improvement periods and one extension of an improvement period. However, she failed to do so. Although petitioner argues that she showed improvement in several areas of her parenting and her life, the record on appeal reveals that petitioner failed to successfully complete parental education and adult life skills classes, failed to implement many of the skills taught in those classes, and missed many visits with the child. As such, petitioner failed to respond or follow through with the rehabilitative services. Therefore, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Next, petitioner asserts that the circuit court erred in terminating her parental rights to the child because there was a less restrictive alternative disposition, pursuant to West Virginia Code § 49–6–5(a) and our holding in Syllabus Point One of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).[3] However, contrary to petitioner's argument that the circuit court should have returned the child to her under a program of supervised or monitored services or assistance, the record reflects that petitioner failed to follow through with services during her improvement periods. Moreover, petitioner's argument ignores our further directions regarding termination upon findings that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va.Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be

---

[3]Petitioner also claims that, because there were less restrictive alternatives available, termination was not necessary for the child's welfare. As the issue of the child's welfare necessarily involves petitioner's assignment of error concerning the child's best interests, we will address those issues collectively, *infra*.

substantially corrected." Syl. pt. 2, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). Here, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Therefore, the circuit court did not err in terminating petitioner's parental rights without the use of intervening less restrictive alternatives.

Petitioner next argues that the circuit court erred in finding that termination was necessary for the child's welfare and in the child's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), termination is appropriate where there is a finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future, and termination is necessary for the child's welfare. Further, we have held that "'[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)." Syl. Pt. 2, *In re Timber M.*, 231 W.Va. 44, 743 S.E.2d 352 (2013). *See also Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child[ren] is the polar star by which decisions must be made which affect children.") (citations omitted). Here, the circuit court found that the child initially exhibited highly inappropriate sexual behavior, but following a program of specialized therapy in foster care, the child made great progress in school and at home. Further, the circuit court found that petitioner missed many visits with the child, which "caused [the child] to get upset." Although informed that her missed visits had this effect on the child, petitioner continued to miss visits. Following a review of the record on appeal, we find no error in the circuit court's decision. Given the facts of this case, termination was necessary for the child's welfare and in her best interests to achieve permanency, stability, and maintain her therapeutic progress.

Finally, petitioner argues that the circuit court erred in failing to provide her with post-termination visitation with the child. We note that the record before this Court does not include a request for post-termination visitation, nor does petitioner cite to any such motion. This Court has repeatedly held that any issue not raised and considered by the court below is waived for appellate review. *Mowery v. Hitt*, 155 W.Va. 103, 181 S.E.2d 334 (1971) ("In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken."); *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979) ("[S]ilence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial."); *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989) (The raise or waive rule is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error."). Therefore, petitioner waived this issue for appellate review. However, even if, the issue were properly before us, we would find no error on the record before us. Following a termination of parental rights, a circuit court may grant post-termination visitation if it considers that such a relationship is in the children's best interest and if it would not unreasonably interfere with their permanent placement. *See State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996); *In Re: Christina L. and Kenneth J.L.*, 194

W.Va. 446, 460 S.E.2d 692 (1995) (Following termination of parental rights, "the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child"). We have also held that the word "may" is permissive and connotes discretion. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. 618, 626 n. 12, 328 S.E.2d 492, 500 n. 12 (1985) ("An elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion." (citations omitted)). Here, the circuit court's termination order is silent on this issue, and, therefore, it did not grant post-termination visitation. Under the facts of this case, we find no basis upon which to remand the case for a further determination of post-termination visitation.

Based upon our review of the record, we find no error in the circuit court's termination of petitioner's parental rights. Given the facts of this case, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and termination was necessary for the child's welfare and in the child's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 9, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5